Dustin DOWHOWER, a minor, by his Guardian ad
Litem, Susan Rosenberg, Tamara Dowhower and
Larry Dowhower, Plaintiffs-Respondents,

v.

WEST BEND MUTUAL INSURANCE COMPANY, Defendant-
Appellant,

Simon MARQUEZ, Viking Insurance Company of Wis-
consin and Aetna Life Insurance Company—Aetna
Health Plan, Defendants.

Supreme Court

*No. 98–2762. Oral argument April 25, 2000.—Decided June
30, 2000.*

(On certification from the court of appeals.)

2000 WI 73

(Also reported in 613 N.W.2d 557.)

On behalf of defendant-appellant there were briefs (in the court of appeals and in the supreme court) by *Rollin E. Krafft*, West Bend, and oral argument by *Rollin E. Krafft*.

For plaintiffs-respondents there were briefs by *Robert L. Jaskulski* and *Domnitz, Mawicke & Goisman, S.C.*, Milwaukee, and oral argument by *Robert L. Jaskulski*.

An amicus curiae brief was filed by *Noreen J. Parrett, James A. Friedman* and *La Follette Godfrey & Kahn*, Madison, on behalf of the Wisconsin Insurance Alliance.

An amicus curiae brief was filed by *Mark L. Thomsen* and *Cannon & Dunphy, S.C.*, Brookfield, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. WILLIAM A. BABLITCH, J. West Bend Mutual Insurance Company (West Bend) appeals the circuit court's judgment declaring that Wis. Stat. § 632.32(5)(i)1 (1995–96)[1] violates the substantive due process clause in Wis. Const. art. I, § 1,[2] and U.S. Const. amend. XIV, § 1.[3] Section 632.32(5)(i) authorizes the use of a type of reducing clause as a permissible provision in uninsured or underinsured motor vehicle insurance (UIM). A reducing clause permits a setoff from the insured's UIM coverage the amount paid to the insured by the underinsured tortfeasor. The statute provides, in relevant part,

(i) A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the

---

[1] All future references to the Wisconsin statutes are to the 1995–96 volumes unless otherwise indicated.

[2] Wisconsin Const. art. I, § 1 states: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

[3] The Due Process Clause in the Fourteenth Amendment of the United States Constitution provides in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law."

bodily injury or death for which the payment is made.

Wis. Stat. § 632.32(5)(i)1.

¶ 2. We conclude that the plaintiffs (the Dowhowers) have not established that Wis. Stat. § 632.32(5)(i)1 deprives them of a constitutionally protected right. As a result, they have not met the predicate threshold for bringing a substantive due process claim. Accordingly, we reverse the judgment of the circuit court.

## Facts

¶ 3. The Dowhowers purchased automobile insurance, including UIM coverage, from West Bend. The policy's declaration page set forth the coverage and limits of liability. For UIM coverage, the declaration stated "UNDERINSURED MOTORIST BODILY INJURY $50,000 EACH PERSON $100,000 EACH ACCIDENT."

¶ 4. The policy also contained an endorsement relating to the UIM coverage. At the top, the endorsement stated "**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**" On page two of the endorsement, the policy set forth, in relevant part, the following:

### LIMIT OF LIABILITY

**A.** The limit of liability shown in the Schedule or in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
 **1.** "Insureds";
 **2.** Claims made;

**3.** Vehicles or premiums shown in the Schedule or in the Declarations; or

**4.** Vehicles involved in the accident.

**B.** The limit of liability shall be reduced by all sums:

**1.** Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible.

¶ 5. While crossing the street in April 1997 Dustin Dowhower was injured as a result of the negligence of a motorist. Viking Insurance Company (Viking) insured the vehicle that struck Dowhower. Viking's policy carried a limit of $25,000 per person, or $50,000 per accident.

¶ 6. Viking paid its $25,000 policy limit to the Dowhowers. Pursuant to Wis. Stat. § 632.32(5)(i) and the reducing clause in its policy, West Bend paid the Dowhowers $25,000, which was the $50,000 UIM bodily injury limit under the UIM policy, less the $25,000 paid by Viking.

¶ 7. The Dowhowers sought a judgment from the circuit court declaring unenforceable the reducing clause provision in the UIM policy and contending that Wis. Stat. § 632.32(5)(i) violated the United States and Wisconsin constitutions. West Bend filed a motion to dismiss the action and counterclaimed for a declaration that it had paid all that it owed pursuant to § 632.32(5)(i) and the policy language.

¶ 8. The Racine County Circuit Court, the Honorable Wayne J. Marik presiding, declared that Wis. Stat. § 632.32(5)(i)1 violated the substantive due process provisions in the state and federal constitutions and that West Bend was obligated to provide $50,000 in UIM benefits to the Dowhowers. West Bend appealed.

118

¶ 9. We accepted certification of the following question from the court of appeals: Does the statute allowing reducing clauses for underinsured motorist coverage, Wis. Stat. § 632.32(5)(i) violate substantive due process under the state and federal constitutions?

## Standard of Review

¶ 10. The constitutionality of a statute presents a question of law that we review de novo. *Riccitelli v. Broekhuizen*, 227 Wis. 2d 100, 119, 595 N.W.2d 397 (1999). A statute is presumed to be constitutional, and, every presumption will be used to sustain the law if at all possible. *Gottlieb v. Milwaukee*, 33 Wis. 2d 408, 147 N.W.2d 655 (1967). The challenger bears the heavy burden of overcoming that presumption. *Riccitelli*, 227 Wis. 2d at 119.

¶ 11. In addition, this constitutional question arises from a declaratory judgment action. "In a declaratory judgment action, the granting or denying of relief is a matter within the discretion of the circuit court." *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 635, 586 N.W.2d 863 (1998). A discretionary decision will be sustained if it is not founded upon an error of law. *Id.* at 635–36.

## Analysis

¶ 12. The sole issue on review is whether Wis. Stat. § 632.32(5)(i)1 violates substantive due process. The Dowhowers challenged § 632.32(5)(i) as contrary to both the substantive due process components of the Fourteenth Amendment to the United States Constitution and of art. I, § 1, of the Wisconsin Constitution.

Our cases interpreting these constitutional provisions find no substantial difference between the due process protections provided in each document. *Reginald D. v. State*, 193 Wis. 2d 299, 307, 533 N.W.2d 181 (1995).

¶ 13. The due process clause in the Fourteenth Amendment to the United States Constitution is a guarantee of " 'more than fair process.' " *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)). The due process clause contains "a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.' " *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

¶ 14. The threshold inquiry when analyzing an alleged violation of substantive due process is whether the challenger has established a deprivation of a liberty or property interest protected by the Constitution. *Penterman v. Wisconsin Elec. Power Co.*, 211 Wis. 2d 458, 480, 565 N.W.2d 521 (1997).

¶ 15. Relying upon *Wipperfurth v. U-Haul Co. of Western Wisconsin, Inc.*, 101 Wis. 2d 586, 297 N.W.2d 65 (1981) and the authority cited therein, the Dowhowers contend the freedom to contract without fraud or deception is both a liberty and property right arising from the due process clause. They allege that Wis. Stat. § 632.32(5)(i)1 unconstitutionally deprives them of this right. For the purposes of this case we will assume, without deciding, that the Dowhowers have identified and set forth a liberty or property interest that is constitutionally protected. However, the Dowhowers have not established that the statute has deprived them of that right. Therefore, we conclude that the state has not inflicted a palpable injury on the

Dowhowers. As a result, substantive due process is not triggered.[4]

¶ 16. The Dowhowers' argument, as we understand it, is that Wis. Stat. § 632.32(5)(i)1 authorizes fraudulent insurance coverage because it permits the insurer to set forth within the policy that its UIM limit of liability is $50,000, even though the maximum amount of coverage that the insurance company will expend on a single claim will be less than $50,000.[5] The Dowhowers contend that the statute permits the insurance policy to omit an explanation that the UIM liability limit is reached by combining all sources of payment. As a result, the Dowhowers assert that the UIM coverage in the policy is rendered illusory by the reducing clause. Based upon rulings by the courts that declared illusory UIM coverage to be void as contrary to public policy, the Dowhowers assert that the statute is unconstitutional because it authorizes illusory UIM coverage. As a result, the Dowhowers contend that the statute deprives them of their right to contract free of fraud and is a violation of substantive due process.

█

¶ 17. To evaluate this contention we consider the language of Wis. Stat. § 632.32(5)(i)1. "The court must interpret a statute, if at all possible, in a manner that will preserve the statute as a constitutional enact-

---

[4] Because the Dowhowers have not established the deprivation of a constitutionally protected right, we need not address the parties' arguments as to whether Wis. Stat. § 632.32(5)(i)1 was supported by a rationale basis.

[5] The litigants dispute whether there are any circumstances under which the full UIM policy limits would be tendered. In its reply brief West Bend contends that in some multi-claimant situations the Dowhowers would recover the full $50,000 UIM policy limit from the insurer.

ment." *Demmith v. Wisconsin Judicial Conference*, 166 Wis. 2d 649, 666 n.13, 480 N.W.2d 502 (1992). The language of § 632.32(5)(i) is unambiguous. Wisconsin Stat. ch. 632 regulates specific lines of insurance contracts. Section 632.32 specifically addresses provisions of motor vehicle insurance policies. Subsection (5) is titled "PERMISSIBLE PROVISIONS." Pursuant to § 632.32(5)(i), "[a] policy may provide that the limits under the policy. . .shall be reduced by. . .[a]mounts paid by or on behalf of any person. . .that may be legally responsible" for causing death or injury. The statute plainly allows a motor vehicle insurance contract to state that the maximum amount that the insurer will pay under the policy will be setoff by amounts paid by a tortfeasor. This is not an endorsement of illusory contracts but the codification of a reduction coverage reducing clause.

¶ 18. Pursuant to a reduction coverage reducing clause, payments by the tortfeasor are setoff from the injured insured's UIM coverage limits. With this approach "the purpose of underinsured motorist coverage is solely to put the insured in the same position he [or she] would have occupied had the tortfeasor's liability limits been the same as the underinsured motorist limits purchased by the insured." 3 Irvin E. Schermer, *Automobile Liability Insurance* § 57.01, p. 57–2 (3d ed. 1995). Wisconsin Stat. § 632.32(5)(i)1 establishes that this type of reduction coverage is a permissible provision in an automobile insurance policy.

¶ 19. Although we find the statute unambiguous, the Dowhowers argue that Wis. Stat. § 632.32(4m) supports their contention that the statute perpetuates an illusion as to the amount that can be recovered from a UIM policy. Section 632.32(4m)(a)2 requires insurance carriers to provide the insured with a notice of the

availability of UIM coverage. Section 632.32(4m)(d) states that if an insured accepts UIM coverage "the insurer shall include the coverage under the policy just delivered to the insured in limits of at least $50,000 per person and $100,000 per accident." The Dowhowers contend that a reasonable insured will expect to qualify for $50,000 from their UIM policy. We disagree.

¶ 20. When the statutes are read together, they provide that an insured, who is purchasing UIM coverage containing a provision such as that permitted by Wis. Stat. § 632.32(5)(i)1, is purchasing a predetermined level of coverage against injury sustained from an underinsured motorist. Wisconsin Stat. § 632.32(4m)(d) provides that underinsured motorist coverage must be issued with limits of at least $50,000 per person. In turn, § 632.32(5)(i)1 provides that the UIM policy limit shall be reduced by amounts paid by a tortfeasor. In total, these statutes establish that the UIM coverage limit purchased by the insured is reached by the combination of contributions from all legally responsible sources. The type of reducing clause authorized in § 632.32(5)(i)1 is neither ambiguous nor contrary to public policy.

¶ 21. We conclude, therefore, that the language of the statute does not deprive the Dowhowers of a constitutionally protected right.

¶ 22. This court, as well as the court of appeals, has previously considered various elements of UIM insurance contracts, such as the definition of underinsured motorist or whether a reducing clause results in illusory coverage. While reducing clauses have in some instances rendered UIM coverage illusory, we have not held that reducing clauses are per se contrary to public policy. Nevertheless, we recognize that underinsured motorist coverage presents something of a " 'legal ice-

berg,' "[6] a seemingly straightforward area of the law, which in fact can prove to be nettlesome to analyze. Several cases illustrate this conclusion.

¶ 23. In *Wood v. American Family Mutual Insurance*, 148 Wis. 2d 639, 436 N.W.2d 594 (1989), overruled on other grounds, *Matthiesen v. Continental Casualty Co.*, 193 Wis. 2d 192, 532 N.W.2d 729 (1995), we examined a reducing clause contained in a contract for UIM coverage and concluded that the phrase "amounts payable" within the clause was ambiguous. As a result, we construed the words in accord with "what a reasonable person in the position of the insured would have understood the words to mean." *Wood*, 148 Wis. 2d at 652. We determined that if "amounts payable" under the UIM policy were offset by the payment made from the underinsured driver's liability policy, the UIM insurance company will never pay the limits of its UIM policy. *Id.* at 653. In *Wood*, we noted that when the insured's UIM policy limit is the same as the statutory minimum liability limit for a motor vehicle policy, i.e., $25,000 and $25,000, application of a reducing clause to the insured's UIM limits results in zero coverage. *Id.* at 653. We characterized this as an illusion. *Id.* It was then held that UIM coverage was:

> available for that margin between the amount received by the respondent from the underinsured driver's liability policy and the actual damages suf-

---

[6] *French v. New Jersey Sch. Bd. Ass'n Ins. Group*, 694 A.2d 1008, 1009 (N.J. 1997) (quoting Cynthia M. Craig and Daniel J. Pomeroy, *New Jersey Auto Insurance Law* § 26.1 at 339 (1997)). In *French*, the New Jersey Supreme Court stated that as UIM coverage has grown in importance in auto insurance law, it has become "an infinitely complex and troublesome area" of law. *Id.*

fered by the respondent. We find that a reasonable person in the position of an insured would understand the words "amounts payable" to be the equivalent of damages compensable because when purchasing UIM coverage, we believe that a reasonable insured expects to be protected against a loss caused by another that is not covered by the underinsured driver's liability coverage.

*Id.* at 654. We concluded that this court's previous statements regarding the purpose of UIM coverage supported our interpretation of the policy, stating that "[t]he purpose of UIM coverage is to compensate the victim of an underinsured motorist's negligence where the third party's liability limits are not adequate to fully compensate the victim for his or her injuries." *Id.*

¶ 24. In *Smith v. Atlantic Mutual Insurance Co.*, 155 Wis. 2d 808, 456 N.W.2d 597 (1990), the policy at issue did not contain the ambiguous "amount payable" language considered in *Wood.* Instead, the policy stated "that it is the 'limit of liability' that is reduced." *Smith*, 155 Wis. 2d at 814 n.1. Our decision in *Smith* turned upon the policy's unambiguous definition of "underinsured motor vehicle." Smith's UIM policy defined an underinsured motor vehicle as a vehicle with an insurance liability limit that was less than the limit of liability in Smith's policy. The limit of Smith's UIM coverage was $50,000. The other vehicle in the accident had a liability limit of $50,000. Therefore the other vehicle was not an underinsured vehicle because it had liability limits equal to, and not less than, Smith's $50,000 limits of UIM coverage. *Id.* at 811.

¶ 25. Subsequently the court of appeals held in *Hoglund v. Secura Insurance*, 176 Wis. 2d 265, 500 N.W.2d 354 (Ct. App. 1993), that although the UIM policy definition of underinsured motor vehicle unam-

biguously excluded the tortfeasor's car, the definition rendered the UIM coverage illusory. The tortfeasor's insurance liability limit was $25,000, the statutory minimum under Wis. Stat. § 344.33(2). The injured insured's policy defined "underinsured motor vehicle" as a vehicle with policy limits of $25,000 or less. The court of appeals determined that Hoglund was paying for coverage that she could never collect upon because all insured Wisconsin drivers will have at least $25,000 of coverage. The court of appeals remanded the case for further consideration of the insured's reasonable expectations regarding the UIM coverage. *Id.* at 272.

¶ 26. As these cases illustrate, when the UIM provision of an insurance policy has limits of liability equal to the statutory minimum for third-party liability insurance, coverage has been held to be illusory if the insured had a reasonable expectation that coverage would be provided. Wisconsin Stat. § 344.33(2) continues to require minimum liability coverage of $25,000. However, in 1995 Wis. Act 21, § 3, the legislature created Wis. Stat. § 632.32(4m), which sets forth in relevant part:

> (4m) Underinsured motorist coverage.
>
> . . .
>
> (d) If an insured [under a policy that goes into effect after October 1, 1995] accepts underinsured motorist coverage, the insurer shall include the coverage under the policy just delivered to the insured in limits of at least $50,000 per person and $100,000 per accident. For any insured who accepts the coverage after notification [on a policy in effect on October 1, 1995], the insurer shall include the coverage under the renewed policy in limits of at least $50,000 per person and $100,000 per accident.

¶ 27. In addition to the illusory coverage issue addressed in *Hoglund*, illusory UIM coverage has also been found where a reduction clause will result in the insured receiving some, but never all, of the policy's stated coverage. This issue was reviewed in *Sweeney v. General Casualty Co.*, 220 Wis. 2d 183, 582 N.W.2d 735 (Ct. App. 1998).

¶ 28. The Sweeneys were in an auto accident and asserted that they had sustained $150,000 in damages. *Id.* at 185. The other vehicle in the accident was insured by a policy that provided a $50,000 liability limit for bodily injury. This policy paid $50,000 to the Sweeneys. *Id.* The Sweeney vehicle carried UIM coverage with a $100,000 per accident limit. *Id.* The Sweeneys sought the entire $100,000 because although their damages were $150,000, the other vehicle paid only $50,000. General Casualty tendered to the Sweeneys $50,000, asserting that the $50,000 paid by the other vehicle was setoff from the UIM policy limit of $100,000 by operation of a reducing clause in the policy. *Id.* The reducing clause in the UIM policy provided that " '[t]he limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible.' " *Id.*

¶ 29. The court of appeals held that this reducing clause was invalid because it caused the UIM coverage to become illusory. *Id.* at 184. In its analysis of the issue, the court of appeals concluded that the controlling rule was articulated in *Kuhn v. Allstate Insurance Co.*, 181 Wis. 2d 453, 510 N.W.2d 826 (Ct. App. 1993)(*Kuhn I*), *aff'd on other grounds*, 193 Wis. 2d 50, 532 N.W.2d 124 (1995). *Sweeney*, 220 Wis. 2d at 193.

¶ 30. In *Kuhn I*, Kuhn was injured by an underinsured driver and sustained damages in excess of

$100,000. *Kuhn,* 181 Wis. 2d at 457. The tortfeasor's insurer paid Kuhn $25,000, the bodily injury liability limit under the policy. *Id.* Pursuant to a reducing clause in Kuhn's UIM policy, Kuhn's UIM insurer sought to setoff the $25,000 recovery from the tortfeasor from the UIM policy's $50,000 per person liability limit. *Id.* at 462–63. The court of appeals in *Kuhn I* found the reducing clause to render the UIM coverage illusory because the "insured will receive some but never all of the $50,000 coverage." *Id.* at 464. The *Kuhn I* decision quoted *Wood* for the proposition that the "UIM coverage is effective where there is a tortfeasor with liability coverage inadequate in amount for the injuries caused." *Id.* at 464 (quoting *Wood,* 148 Wis. 2d at 653).

¶ 31. Applying the *Kuhn I* holding in *Sweeney,* the court of appeals found the reducing clause in the Sweeney's policy invalid because it rendered the UIM coverage illusory. *Sweeney,* 220 Wis. 2d at 193. The analysis in *Sweeney* did not address Wis. Stat. § 632.32(5).

¶ 32. The state of the law was summed up in a concurrence to *Sweeney* by Judge Deininger who wrote in part:

> I have difficulty understanding what public policy is served by our present and prior holdings on the issue presented. We insist here and in *Kuhn I* that an insurance policy may not be written so as to guarantee that a certain dollar amount of insurance coverage will be available to compensate an insured when he or she is injured in an accident caused by another driver, if the policy provides that the specified sum will be paid in part by the tortfeasor's insurer and in part by the insured's own company. Yet, the coverage in question may be written, with

128

judicial blessing, so as to limit the compensation available to the insured to the same fixed sum, provided it is paid entirely by the tortfeasor's insurer. The legislature apparently does not share this court's view that policy language such as the reducing clause at issue here violates public policy. Section 632.32(5)(i)1, STATS., effective July 15, 1995, now permits a motor vehicle insurance policy to "provide that the limits under the policy for uninsured and underinsured motorist coverage for bodily injury. . .shall be reduced by. . .[a]mounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury. . .for which the payment is made."

*Id.* at 199.

█

¶ 33. When we consider these cases in conjunction with Wis. Stat. § 632.32(5)(i)1, we conclude that an insurer may reduce payments made pursuant to a UIM policy by amounts received from other legally responsible persons or organizations, provided that the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources.

¶ 34. The rules for interpreting insurance contracts are well established:

Insurance contracts are controlled by the same rules of construction as are applied to other contracts. Ambiguities in coverage are to be construed in favor of coverage, while exclusions are narrowly construed against the insurer. Words or phrases are ambiguous when they are susceptible to more than one reasonable construction. However, when the terms of an insurance policy are plain on their face, the policy must not be rewritten by construction.

*Smith*, 155 Wis. 2d at 810–11 (internal citations omitted).

¶ 35. We recognize that a reducing clause may be ambiguous within the context of the insurance contract. If the terms of the policy are ambiguous, then the court may attempt "to determine what a reasonable person in the position of the insured would have understood the words of the policy to mean." *Taylor v. Greatway Insurance Co.*, 2000 WI App 64, ¶ 8, 233 Wis. 2d 703, 608 N.W.2d 722. At oral argument, the Dowhowers argued that before considering the constitutional issue presented here, the threshold question for analysis should be whether the reducing clause in West Bend's policy is ambiguous. Five members of the court, Chief Justice Abrahamson, Justices Bablitch, Wilcox, Bradley and Crooks, remand this action to the circuit court for consideration of whether within the context of the insurance contract the reducing clause is ambiguous. Two members of the court, Justices Prosser and Sykes, find the contract unambiguous as it relates to the reducing clause.

¶ 36. In sum, we hold that Wis. Stat. § 632.32(5)(i)1 on its own terms does not deprive the Dowhowers of any state or federal constitutional right to enter into insurance contracts without fraud, and, as a result, it does not present a substantive due process violation. We remand the case to the circuit court to address whether the language of the contract is ambiguous and, if so, whether a reasonable person in the position of the insured would have understood the policy to mean that the $50,000 limit in UIM coverage was to be a maximum recovery from all sources.

130

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded to the circuit court.

¶ 37. ANN WALSH BRADLEY, J. *(concurring)*. I agree with the majority that the Dowhowers have failed to establish that Wis. Stat. § 632.32(5)(i)1 deprives them of a constitutionally protected right. I write separately, however, because I conclude that the policy is ambiguous. It fails to convey clearly to a reasonable person in the position of the insured that the insurance company is not obligated to pay the full $50,000 limits.

¶ 38. Wisconsin Stat. § 632.32(5)(i)1 grants insurers the right to reduce their limits of liability by the sums paid by or on behalf of the tortfeasor. Reducing clauses are not *per se* deceptive. However, for any particular reducing clause to pass muster under Wis. Stat. § 632.32(5)(i)1, the policy must clearly explain to the insured that the insured's recovery will be the aggregate of all sums paid from all sources up to the insurer's limit of liability. West Bend's policy fails to comply with this requirement.

¶ 39. The West Bend policy issued to the Dowhowers does not clearly and unequivocally inform them that the insurer's $50,000 limit of liability will be reduced by any and all amounts paid to the Dowhowers by the tortfeasor. Instead, the policy conveys inconsistent messages that would befuddle a reasonable insured in the Dowhowers' position and would lead the insured to expect full coverage from West Bend in the amount of $50,000.

¶ 40. First and foremost, on the Declaration page of the policy West Bend lists its underinsured motorist

coverage as "**$50,000 EACH PERSON $100,000 EACH ACCIDENT**." Arguably, the Declaration page is the most crucial section of the policy for the typical insured because it specifies the various types of coverage purchased by the insured, followed by the limit of liability for each, and also provides the respective premiums.

¶ 41. Insurance contracts are construed to comport with the reasonable expectations of the insured. *Sweeney v. General Cas. Co.*, 220 Wis. 2d 183, 194, 582 N.W.2d 735 (Ct. App. 1998) (quoting *Matthiesen v. Continental Cas. Co.*, 193 Wis. 2d 192, 203–04, 532 N.W.2d 729 (1995)). Insureds often examine only the Declaration page to verify that they have been provided the coverage for which they contracted.

¶ 42. Examining the Declaration page in West Bend's policy, a reasonable policyholder comes to the conclusion that the insurer will provide underinsured motorist coverage in the amount of $50,000 per person. Absent is any reference to a potential reduction in the amount. The Declaration page creates an illusion of coverage because it misrepresents West Bend's liability as $50,000, when in reality the insurer will rarely, if ever, disburse the full amount by virtue of the reducing clause found elsewhere in its policy.

¶ 43. Those policyholders who are more curious and perhaps more savvy may look beyond the Declaration page in search of a detailed explanation of their underinsured motorist coverage. An examination of the policy's Table of Contents will not dispel the insured's expectation of coverage in the amount of $50,000.

¶ 44. The Table of Contents lists numerous types of coverage and clearly directs the insured to pages in the policy which set forth the "limit of liability" on each type of coverage. Although a specific "limit of liability"

is listed for uninsured motorist coverage, medical payment coverage, liability coverage, and damage to your auto coverage, noticeably absent is any listing of a limitation of liability for underinsured motorist coverage. Thus, a reasonable insured would not anticipate any reduction of the coverage guaranteed in the Declaration.

¶ 45. To conclude otherwise, a reasonable insured would be required to look beyond the Declaration page which gives an insured an expectation of a full $50,000, and beyond the Table of Contents, which gives a reasonable insured an expectation of no limitation of underinsured coverage, and beyond the eleven-page policy, and beyond the first endorsement—notice of payment plan options, and beyond the three-page second endorsement—amendment of policy provisions, and beyond the third endorsement—punitive or exemplary damages exclusion, and beyond the fourth endorsement—notice of an insured right to file a complaint, and beyond the three-page fifth endorsement—important notice regarding coverage changes, and beyond the sixth endorsement—windshield repair notice, and beyond the seventh endorsement—important notice regarding coverage changes, and beyond the eighth endorsement—split liability limits, and beyond the ninth endorsement—waiver of deductible, and beyond the tenth endorsement—split uninsured motorist limits, and beyond the two-page eleventh endorsement—uninsured motorist coverage, and beyond the twelfth endorsement—split underinsured motorist limits, until finally arriving at the bottom of the second page of the three-page thirteenth endorsement—underinsured motorist coverage, to find a "limit of liability" section that includes several provisions.

¶ 46. The first provision states that West Bend's limit of liability comports with the limit set forth in the Declaration. This signals to the policyholder that West Bend will pay the entire amount of $50,000 guaranteed by the Declaration. However, the next provision represents the reducing clause and states that the limit of liability will be reduced by all sums paid by or on behalf of the tortfeasor. The two provisions taken together are inconsistent with other sections of West Bend's policy.

¶ 47. Even people who do read their insurance policies often do not understand these contracts. Jeffrey W. Stempel, *Law of Insurance Contract Disputes* § 4.04, 4–17 (2d ed. Supp. 2000) (citing Restatement (Second) of Contracts § 211 cmt. b (1981)). Viewed in conjunction, the two endorsement provisions, the Declaration, and the Table of Contents illustrate the policyholder's difficulty in fully comprehending the extent of underinsured motorist coverage. The inconsistency among the separate sections of West Bend's policy renders the policy ambiguous.

¶ 48. Ambiguities in insurance contracts are construed against the insurer and in favor of coverage. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990); *Filing v. Commercial Union Midwest Ins. Co.*, 217 Wis. 2d 640, 647, 579 N.W.2d 65 (Ct. App. 1998). Accordingly, the underinsured motorist provisions should be construed against West Bend, and the Dowhowers should be entitled to their guaranteed recovery of the full $50,000.

¶ 49. Otherwise, West Bend benefits from an insurance policy that perpetrates an illusion of full coverage upon unsuspecting policyholders who do not meticulously read or fully comprehend the entirety of their insurance policies. The illusion of the West Bend policy lies in that insureds will receive some of the

$50,000 but rarely ever the full amount guaranteed by the Declaration.

¶ 50. The legislature was aware of the concerns over deception voiced by Wisconsin courts. Although it authorized reducing clauses under Wis. Stat. § 632.32(5)(i)1, the legislature envisioned clear policies without a hint of illusion to protect consumers from fraudulent practices. It did not authorize deception in the implementation of the statute.

¶ 51. I agree with the majority that the Dowhowers' constitutional claim lacks merit. Although the insureds have attempted to label this case as a substantive due process case, it is not. To trigger substantive due process, there must be a constitutionally protected right and a deprivation of that right. The right asserted by the Dowhowers, the freedom to contract without fraud or deception, is tenuous.

¶ 52. Additionally, the Dowhowers have failed to demonstrate that Wis. Stat. § 632.32(5)(i)1 deprives them of that asserted right. By enacting the statute, the legislature has granted insurers the right to reduce their limits of liability by the sums paid by or on behalf of the tortfeasor. Whether or not one agrees with the legislature is of no consequence. Wisconsin Stat. § 632.32(5)(i)1 does not provide for an illusory, fraudulent, or deceptive policy.

¶ 53. The majority opinion discusses prior underinsured motorist cases at length. Majority op. at ¶¶ 22–32. However, the purpose of this discussion remains unclear because the majority fails to address what role, if any, prior case law has played in the resolution of this case. Furthermore, the majority is silent as to what effect, if any, Wis. Stat. § 632.32(5)(i)1 and the holding in this case have on the precedential value of prior case law.

¶ 54. In sum, Wis. Stat. § 632.32(5)(i)1 authorizes the offsetting of underinsured motorist coverage when the insureds have recovered from sources other than the insurer. There is nothing illusory about a well-drafted and clear reducing clause, one that specifically and unequivocally guarantees that the insured's recovery will be from *all sources*. The policy setting forth underinsured motorist coverage must clearly convey that the insured is stipulating to partial recovery from the tortfeasor's liability coverage. The West Bend policy fails to satisfy this mandate. Nevertheless, to avoid a splintered decision with questionable precedential value, I join in the remand to the circuit court for consideration of whether within the context of the insurance policy the reducing clause is ambiguous.

¶ 55. I am authorized to state that SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE, joins this concurrence.