The ESTATE OF Jean E. DORSCHNER, by its Personal Representative, Gene P. Dorschner, Plaintiff-Appellant,†

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Respondent,

Gordon J. SERVIS, Defendant.

Court of Appeals

*No. 00–2229. Submitted on briefs February 26, 2001.—Decided April 25, 2001.*

## 2001 WI App 117

(Also reported in 628 N.W.2d 414.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *John T. Schomisch, Jr.* of *Dilley, Schomisch and Associates, L.L.C.* of Appleton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Claude J. Covelli* of *Boardman, Suhr, Curry & Field, LLP* of Madison.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1.  BROWN, P.J.  The estate of Jean E. Dorschner appeals from a summary judgment enforcing the antistacking clause contained in an uninsured

motorist policy owned by Dorschner at the time of her death. The estate asserts that the policy is ambiguous and illusory because it has not fulfilled its promise of mandatory coverage. Because WIS. STAT. § 632.32(5)(f) (1999–2000)[1] explicitly authorizes the type of antis-tacking provision contained in the policy, we affirm the order of summary judgment.

¶ 2. Dorschner died of injuries sustained in a two-car accident. Dorschner was a passenger in a car owned and operated by a relative. The accident was caused primarily by Gordon J. Servis, who was driving while intoxicated in an uninsured motor vehicle. The car in which Dorschner was riding was insured by Economy Preferred Insurance Company (Economy). The Economy car policy provided uninsured motorist (UM) coverage with $100,000 per person and $300,000 per accident limits of liability. As an occupant of the car, Dorschner was insured for UM coverage. Economy paid Dorschner's estate the full $100,000 limits of its coverage. The estate then sought to collect the $50,000 limits contained in a UM policy issued by State Farm Mutual Automobile Insurance Company (State Farm) and owned by Dorschner at the time of her death. On a motion for summary judgment, the trial court held that the antistacking clause contained in Dorschner's policy prevents the estate from stacking the State Farm coverage on top of the Economy coverage.

¶ 3. The court of appeals reviews summary judgment motions de novo. *Blazekovic v. City of Milwaukee*, 225 Wis. 2d 837, 840, 593 N.W.2d 809 (Ct. App. 1999), *aff'd*, 2000 WI 41, 234 Wis. 2d 587, 610 N.W.2d 467. For summary judgment to be granted, there must be no

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version.

genuine issue of material fact and the moving party must be entitled to judgment as a matter of law. *Calbow v. Midwest Sec. Ins. Co.*, 217 Wis. 2d 675, 679, 579 N.W.2d 264 (Ct. App. 1998). Furthermore, the interpretation of an insurance contract is a question of law that this court decides without deference to the trial court. *Meyer v. Mich. Mut. Ins. Co.*, 2000 WI App 37, ¶ 8, 233 Wis. 2d 221, 607 N.W.2d 333. Whether the language in the policy is ambiguous is also a question of law. *Id.* at ¶ 9. Ambiguity exists if the words or phrases of the policy are susceptible to more than one reasonable interpretation. *Id.* This is determined by considering what a reasonable person in the position of the insured would have understood the policy to mean. *Id.* at ¶ 8. There are no disputed facts here and the only remaining issue is the question of law involving the interpretation of the policy.

¶ 4.   The source of contention between the parties is the following provisions contained in Endorsement 6083BB of Dorschner's policy, commonly known as the antistacking clause and the excess clause:

> Regardless of the number of policies involved, vehicles involved, *persons* covered, claims made, vehicles insured, or premiums paid, the limits for uninsured motor vehicle coverage under this policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limits of uninsured motor vehicle coverage available for *bodily injury* suffered by an *insured* in any one accident.
>
> Subject to the above:
>
> . . . .
>
> 2.   If the *insured* sustains *bodily injury* while *occupying* a vehicle not owned or leased by *you, your*

*spouse* or *your* relative who resides primarily in *your* household, then this coverage applies:

a.    as excess to any uninsured motor vehicle coverage which applies to the vehicle or driver as primary coverage; but

b.    only in the amount by which it exceeds the primary coverage.

¶ 5.   We understand the estate to argue that the excess clause has the effect of eliminating the policy's UM coverage altogether.[2] The purpose of mandatory UM coverage is to place the insured in the same position as if the uninsured motorist had been insured. Yet, according to the estate, the language of the policy's excess clause, which states that its coverage is applicable only in the amount by which it exceeds the primary coverage, circumvents this purpose. The estate contends that, in this case, the excess clause allows State Farm to pay nothing at all even though the decedent had paid for mandatory coverage: "To allow a policy to not provide any uninsured motorist benefits is contrary to public policy, Wisconsin Statutes and case law. [The estate] should receive State Farm uninsured motorist policy limits of $50,000. [The decedent] paid for it."

¶ 6.   State Farm, on the other hand, points out that the excess clause merely identifies which coverage

---

[2] Initially, in its brief the estate argues that State Farm should not rely on the reducing clause in the insurance contract to reduce its $50,000 limits by the $100,000 paid by Economy. However, as State Farm points out, the reducing clause is not applicable in this case because payment was not made to the estate by or on behalf of any person legally responsible for the bodily injury. Moreover, the decision of the trial court was based on the application of the antistacking clause and not the reducing clause. Yet, the estate's brief contains no discussion whatsoever on the issue of the antistacking clause.

is primary and which is excess. It has no bearing on the maximum amount of UM coverage available under the policy. "[T]he sole function of the excess clause is to specify the order in which policies contribute to payment of the maximum uninsured motorist recovery defined by the anti-stacking clause. In particular, the excess clause assures that [the estate] will obtain the benefit of the highest coverage available under any one single policy, even if that policy happens to provide excess coverage." Thus, State Farm contends it is the antistacking clause in the policy, authorized under WIS. STAT. § 632.32(5)(f), which sets the maximum amount of recovery and is outcome determinative.

¶ 7. We begin our discussion with a review of the relevant statutes and case law. WISCONSIN STAT. § 632.32 applies to all motor vehicle insurance policies issued or delivered in Wisconsin. Sec. 632.32(1); *Clark v. Am. Family Mut. Ins. Co.*, 218 Wis. 2d 169, 173, 577 N.W.2d 790 (1998). Section 632.32(4)(a) requires that every automobile liability insurance policy issued in this state include UM coverage in amounts of at least $25,000 per person and $50,000 per accident. Our supreme court has stated that the purpose of § 632.32(4)(a) is to place the insured in the same position as if the uninsured motorist had been insured. *See Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 645, 586 N.W.2d 863 (1998).

¶ 8. This purpose is subject to new provisions contained in WIS. STAT. § 632.32(5). This section of the statute resuscitates permissible limitations that a UM policy may incorporate, including the antistacking provision at issue here. Sec. 632.32(5)(f). Stacking is a term used to denote the availability of more than one

policy in the reimbursement of the losses of the insured. *Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 159 n.1, 361 N.W.2d 673 (1985). An antistacking clause provides that recovery is limited to the amount of coverage afforded by the policy with the highest limits. *Id.* at 160 n.2. Section 632.32(5)(f) is the codification of an antistacking clause:

> (f)   A policy may provide that regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid the limits for any coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available for bodily injury or death suffered by a person in any one accident.

Application of the antistacking clause in Dorschner's policy, as authorized by this statute, governs the outcome of this case.

¶ 9.   In our analysis, it is helpful to look to other case law that has interpreted and applied the antistacking provision contained in WIS. STAT. § 632.32(5)(f). In *Hanson v. Prudential Property & Casualty Insurance Co.*, 224 Wis. 2d 356, 591 N.W.2d 619 (Ct. App. 1999), the plaintiff argued that he should be able to stack his underinsured motorist coverages because the insurer failed to notify him of statutory changes validating the antistacking provision in the policy. *Id.* at 368. He also contended that the antistacking provision constituted an unconstitutional impairment of the right to contract. *Id.* at 368–69. The court rejected both arguments, stating that the elasticity clause incorporated into the contract conformed the policy to changes in the law as the parties must have anticipated when the contract was signed. *Id.* The statute does not

require notification when the change in the contract is initiated by the legislature. Finally, Hanson argued that the antistacking clause was void because it did not exactly conform to language set forth in § 632.32(5)(f). This argument also failed because the statute "contains no indication that magic language is required or that a policy must parrot the statute." *Hanson*, 224 Wis. 2d at 370.

¶ 10.    In *Dowhower v. West Bend Mutual Insurance Co.*, 2000 WI 73, 236 Wis. 2d 113, 613 N.W.2d 557, the plaintiff claimed that the statute authorizing reduction clauses is unconstitutional because it allows insurance companies to offer illusory underinsured motorist (UIM) coverage. *Id.* at ¶ 16. The court found the statute to be neither ambiguous nor contrary to public policy. *Id.* at ¶ 20. It held that reducing clauses were lawful "provided that the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources." *Id.* at ¶ 33. Notably, the *Dowhower* court still recognized that a reducing clause may be ambiguous within the context of the insurance contract. *Id.* at ¶ 35. We believe this open door is the reason the estate cites to this case in its brief.[3] Left

---

[3] The estate also seeks to rely on *Landvatter v. Globe Security Insurance Co.*, 100 Wis. 2d 21, 300 N.W.2d 875 (Ct. App. 1980), and *Tahtinen v. MSI Insurance Co.*, 122 Wis. 2d 158, 361 N.W.2d 673 (1985). Both of these cases relied on WIS. STAT. § 631.43(1) to allow stacking of UM coverage as a means to invalidate insurance policy clauses which limited coverage. *Landvatter*, 100 Wis. 2d at 26; *Tahtinen*, 122 Wis. 2d at 162. The Wisconsin legislature overturned these cases when it enacted 1995 Wis. Act 21, § 4 which, among other things, created the provision allowing insurance policies to prohibit stacking of coverage. WIS. STAT. § 632.32(5)(f); *see Hull v. State Farm Mut.*

unanswered, however, and more to the point in this case, was the question whether an *unambiguous* reducing clause could still be considered illusory given the clear legislative directive of the authorizing statute.

¶ 11.   The appellate court answered this question in *Sukala v. Heritage Mutual Insurance Co.*, 2000 WI App 266, 240 Wis. 2d 65, 622 N.W.2d 457. In that case the court found the reducing clause, which mimicked the language of the authorizing statute, was clearly unambiguous. *Id.* at ¶¶ 12 n.10 & 14. The court concluded that under *Dowhower* and the declared public policy of the legislature in WIS. STAT. § 632.32(5)(i), reducing clauses that comply with the statute cannot render UIM coverage illusory. "Once we have concluded that the UIM provisions of a policy are unambiguous, as we have here, then our inquiry is at an end." *Sukala*, 2000 WI App 266 at ¶ 20.

¶ 12.   *Dowhower* and *Sukala* analyzed the reducing clause authorized under WIS. STAT. § 632.32(5)(i). However, the rationale of those cases is also applicable to this case. As in *Sukala*, the antistacking clause contained in Dorschner's policy tracks verbatim the language of § 632.32(5)(f) which authorizes such provisions. We assume this is an example of what the legislature viewed as an unambiguous means of conveying the antistacking provision. *See Sukala*, 2000 WI App 266 at ¶ 12 n.10. Nor do we find that the antistacking clause, when read together with the rest of the policy, is susceptible to more than one construction. Therefore, we need not inquire, as the estate requests, whether the UM policy is illusory. We simply apply the policy language to the facts of the case. *Id.* at ¶ 19.

---

*Auto. Ins. Co.*, 222 Wis. 2d 627, 645 n.11, 586 N.W.2d 863 (1998); *Clark v. Am. Family Mut. Ins. Co.*, 218 Wis. 2d 169, 176–77 & n.3, 577 N.W.2d 790 (1998).

¶ 13.   Here, Dorschner has already received a $100,000 payment from Economy as the primary insurer. This amount is $50,000 more than the maximum coverage allowed under the State Farm policy. Application of the antistacking clause results in Dorschner receiving the highest coverage available under any single policy, which is exactly what her contract promised to do. It also means that Dorschner is not entitled to collect the $50,000 limit under the State Farm policy on top of the Economy policy. Therefore, the order of summary judgment on behalf of State Farm is affirmed.

*By the Court.*—Order affirmed.