250 Wis.2d 269 (2001)
2002 WI App 11
640 N.W.2d 215
Danny L. SCHROEDER, Plaintiff-Respondent,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Defendant-Appellant,
Linda K. BOURDO, Defendant.
No. 01-0252.
Court of Appeals of Wisconsin.
Submitted on briefs December 4, 2001.
Decided December 27, 2001.
*271 On behalf of the defendant-appellant, the cause was submitted on the briefs of Thomas E. Goss, Jr., of Mueller, Goss & Possi, S.C., of Milwaukee.
On behalf of the plaintiff-respondent, the cause was submitted on the brief of Virginia M. Antoine, of Habush, Habush & Rottier, S.C., of Milwaukee.
Before Fine, Schudson and Curley, JJ.
*272 ¶ 1. SCHUDSON, J.
State Farm Mutual Automobile Insurance Co. appeals from the circuit court order granting Danny L. Schroeder's motion for declaratory judgment. The circuit court concluded that Schroeder's State Farm automobile insurance policy's antistacking provision was ambiguous and, therefore, that it did not preclude payment under the policy's uninsured motor vehicle provision even though payment had been made under the uninsured motor vehicle provision of Schroeder's ex-wife's State Farm policy, following the death of their daughter.
¶ 2. State Farm argues that recent decisions, including Estate of Dorschner v. State Farm Mutual Automobile Insurance Co., 2001 WI App 117, 244 Wis. 2d 261, 628 N.W.2d 414, review denied, 2001 WI 114, 246 Wis. 2d 175, 634 N.W.2d 321, decided six months after the circuit court's decision in the instant case, require reversal. State Farm is correct and, accordingly, we reverse.

I. BACKGROUND
¶ 3. On August 22, 1996, Schroeder's sixteen-year-old daughter, Dorine, was killed in an auto accident while riding as a passenger in an uninsured motor vehicle. Schroeder and his ex-wife, Linda K. Bourdo, each had a car insured with State Farm. Each of the two policies provided $50,000 uninsured motor vehicle coverage per person, and each included the following antistacking provision:
Regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles insured, or premiums paid, the limits for uninsured motor vehicle coverage under this policy may not be added to the limits for similar coverage applying to *273 other motor vehicles to determine the limits of uninsured motor vehicle coverage available for bodily injury suffered by an insured in any one accident.
It is undisputed that, under each policy, Dorine was a "person[] covered" as an "insured" and that "bodily injury" included death resulting from bodily injury. See also WIS. STAT. § 632.32(4)(a) (1999-2000)[1] (Uninsured motorist coverage is "[f]or the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom."). It also is undisputed that both Schroeder and Bourdo are not only named "insured[s]" under their respective policies, but also "insured[s]" under each other's policies, as heirs of Dorine.
¶ 4. As a result of Dorine's death, State Farm paid Schroeder and Bourdo $50,000the policy limit under the uninsured motor vehicle provision of her policy.[2] Consequently, State Farm applied the antistacking provision of Schroeder's policy and denied his claim for an additional $50,000 payment.
¶ 5. Challenging State Farm's denial, Schroeder argued that the policy's antistacking provision did not apply and, further, that WIS. STAT. § 632.32(5)(f),[3] the *274 1995 enactment allowing antistacking provisions, was unconstitutional because it denied him substantive due process of law. The circuit court concluded that the policy's antistacking provision was ambiguous and, therefore, must be construed in Schroeder's favor. Granting Schroeder declaratory judgment on that basis, the court did not decide his constitutional challenge.
¶ 6. On appeal, Schroeder again argues that the antistacking provision of his policy is inapplicable to the circumstances of this case. He also reiterates his argument that WIS. STAT. § 632.32(5)(f) unconstitutionally denies him substantive due process of law.

II. DISCUSSION

A. Applicability
[1, 2]
¶ 7. The interpretation and application of an antistacking provision of an automobile insurance policy present questions of law subject to this court's de novo review. See Dorschner, 2001 WI App 117 at ¶ 3. Whether an antistacking provision is ambiguous presents a question of law we also review without deference to the circuit court. See id.
[3]
¶ 8. Schroeder argues that the antistacking provision of his policy is either inapplicable to his circumstances or ambiguous so that, in any event, it does not preclude his claim for uninsured motorist coverage merely because of the uninsured motor vehicle payment made under his ex-wife's policy. He focuses on the *275 phrase, "similar coverage applying to other motor vehicles," and contends that the phrase either does not encompass the uninsured motor vehicle coverage under his ex-wife's policy or, at the very least, is ambiguous on that point. We conclude, however, that Schroeder's interpretation is incorrect. It ignores the antistacking provision's "regardless" phrase and fails to adequately account for this court's decision in Dorschner.
¶ 9. Schroeder strives mightily to establish that the antistacking provision of his policy refers only to "similar coverage" within his own policy, and to "other motor vehicles" covered under his own policy. He explains:
[S]ince the anti[] stacking provision uses the term "similar" coverage, this must mean coverage similar to the type of coverage which is initially referred to in the provision. The provision initially refers to "uninsured motor vehicle coverage under this policy" and it says that the limits of that coverage cannot be added to the limits of "similar coverage applying to other motor vehicles." Therefore, the term "similar coverage" must refer to coverage that is similar to "uninsured motor vehicle coverage under this policy." One must then ask: What type of coverage is "similar" to "uninsured motor vehicle coverage under this policy"? The answer is: other uninsured motor vehicle coverage under this policy. A policy may provide uninsured motor vehicle coverage with respect to more than one vehicle. Therefore, the anti[]stacking provision essentially means that the limits of uninsured motor vehicle coverage provided under the policy with respect to one vehicle cannot be added to the limits of uninsured motor vehicle coverage provided under the policy with respect to other vehicles.
If State Farm had intended to provide in the anti[]stacking provision that the limits of uninsured *276 motor vehicle coverage under the policy could not be added to the limits of any other uninsured motor vehicle coverage, regardless of whether that coverage was provided under the same policy or another policy, State Farm could have said that. It could have said, for instance, that "the limits for uninsured motor vehicle coverage under this policy may not be added to the limits of any other uninsured motor vehicle coverage, under this policy or another policy." However, State Farm did not say that.
We disagree. Indeed, State Farm, in effect, did "say that" and more. By prefacing the antistacking provision with the all-encompassing introductory words"Regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles insured, or premiums paid"State Farm did everything semantically possible to extend its antistacking endorsement to any other policy providing coverage.
¶ 10. In Dorschner, this court considered circumstances that, in many important respects, are similar to those of the instant case. Dorschner was a passenger in an insured car when she was killed in an auto accident with an uninsured vehicle driven by a drunk driver. See Dorschner, 2001 WI App 117 at ¶ 2. The policy covering the car in which Dorschner was riding provided uninsured motorist coverage; the policy paid Dorschner's estate the full limits of that coverage. Id. The estate then sought to collect the policy limits under the uninsured motorist provision of Dorschner's State Farm policy. Id.
¶ 11. Dorschner's State Farm policy, however, included an antistacking clause identical to the one in the instant case. See id. at ¶ 4. Rejecting the argument that the antistacking provision was ambiguous, we concluded: "[T]he antistacking clause ... tracks verbatim *277 the language [WIS. STAT.] § 632.32(5)(f) which authorizes such provisions. We assume this is an example of what the legislature viewed as an unambiguous means of conveying the antistacking provision." Id. at ¶ 12 (emphasis added).
[4]
¶ 12. While Schroeder points out that the facts of Dorschner do not line up exactly with those of his case, he fails to explain how the slight distinctions make any difference. After all, according to the introductory words of the antistacking provision in the State Farm policies, regardless of whether an uninsured motor vehicle payment has been made under a policy issued to the owner of an insured vehicle (as in Dorschner), or under a policy issued to a victim's parent (as in the instant case), the antistacking limitation is triggered. Thus, our conclusion in Dorschner controls this case as well.

B. Constitutionality
[5]
¶ 13. As noted, the circuit court did not address Schroeder's constitutional argument; we do so here. See State v. Holland Plastics Co., 111 Wis. 2d 497, 504-05, 331 N.W.2d 320 (1983) (appellate court may address issue raised but not resolved in circuit court where circuit court disposed of case on separate basis).
[6-8]
¶ 14. As the supreme court recently reiterated in reviewing a due-process challenge to another provision of WIS. STAT. § 632.32: "The constitutionality of a statute presents a question of law that we review de novo. A statute is presumed to be constitutional, and[] every presumption will be used to sustain the law if at all *278 possible. The challenger bears the heavy burden of overcoming that presumption." Dowhower v. West Bend Mut. Ins. Co., 2000 WI 73, ¶ 10, 236 Wis. 2d 113, 613 N.W.2d 557 (citations omitted).
¶ 15. Schroeder argues that WIS. STAT. § 632.32(5)(f), as applied to the circumstances of this case, is unconstitutional under WIS. CONST. art. I, § 1 and the Due Process Clause of the Fourteenth Amendment of the United States Constitution.[4] Pointing out that before enactment of the statute in 1995, State Farm's antistacking provision would have been disallowed, Schroeder maintains that, but for § 632.32(5)(f), he would have been entitled to stack his policy's uninsured motor vehicle coverage on the uninsured motor vehicle coverage of his ex-wife's policy. Therefore, Schroeder asserts, "there is no doubt" that the statute deprives him of rights under his insurance contract. We disagree.
[9]
¶ 16. "The threshold inquiry when analyzing an alleged violation of substantive due process is whether the challenger has established a deprivation of a liberty or property interest protected by the Constitution." Dowhower, 2000 WI 73 at ¶ 14. Here, under the supreme court's rationale in Dowhower, presented in a *279 closely related context, we conclude that Schroeder has failed to establish any deprivation of a constitutionally protected liberty or property interest, even assuming the existence of such a liberty or interest.
¶ 17. In Dowhower, the supreme court considered a substantive due-process challenge to WIS. STAT. § 632.32(5)(i)1.[5]Id. at ¶ 12. The court assumed, without deciding, that the Dowhowers, challenging the statute, had "identified and set forth" a constitutionally protected liberty or property interest. Id. at ¶ 15. Nevertheless, the court concluded that they had not established that the statute deprived them of any such interest or right. Id.
¶ 18. The supreme court concluded that "an insurer may reduce payments" under an uninsured or underinsured motor vehicle (UIM) insurance policy provision, "provided that the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources." Id. at ¶ 33. Accordingly, the court held that the statute "on its own terms does not deprive the Dowhowers of any state or federal constitutional right to enter into insurance contracts without fraud, and, as a result, it does not present a substantive due process violation." Id. at ¶ 36.
*280 ¶ 19. Again, Schroeder correctly notes that his circumstances are distinguishable; after all, his due-process challenge is to a subsection of WIS. STAT. § 632.32 that was not at issue in Dowhower. But, once again, Schroeder has offered nothing to establish that this distinction makes any difference. Indeed, even if the essential similarities between reducing clauses and antistacking clauses were not self-evident, the supreme court and this court have equated them for analytical purposes. See Blazekovic v. City of Milwaukee, 2000 WI 41, ¶ 20, 234 Wis. 2d 587, 610 N.W.2d 467 ("The first four provisions, § 632.32(5)(f)-(5)(i), primarily address anti[]stacking and reducing clauses, validating such clauses to avoid the duplication of benefits permitted under prior case law [preceding the legislative change in 1995]."); see also Dorschner, 2001 WI App 117 at ¶ 12 (The "rationale" of Dowhower, analyzing the reducing clause authorized under WIS. STAT. § 632.32(5)(i), is "also applicable to this case" involving the antistacking provision under § 632.32(5)(f).). Thus, we conclude, recent case law solidifies the legal foundation on which we must also reject Schroeder's constitutional challenge.
By the Court.Order reversed.
NOTES
[1] All references to the Wisconsin Statutes are to the 1999-2000 version unless otherwise noted.
[2] According to his affidavit, however, Schroeder did not receive any portion of that payment.
[3] WISCONSIN STAT. § 632.32(5)(f) provides:

A policy may provide that regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid[,] the limits for any coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available for bodily injury or death suffered by a person in any one accident.
[4] WISCONSIN CONST. art. I, § 1 states: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed." The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law."
[5] WISCONSIN STAT. § 632.32(5)(i), the statutory authorization for "reducing" clauses in automobile insurance policies, provides, in relevant part:

A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:
1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.