Rodney DEMPICH and Julie Dempich,
Plaintiffs-Respondents-Cross-Appellants,†

v.

PEKIN INSURANCE COMPANY,
Defendant-Respondent-Cross-Respondent,

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, Defendant-Appellant-Cross-Respondent.

Court of Appeals

*No. 2004AP1861. Submitted on briefs February 10, 2005.
—Decided January 26, 2006.*

2006 WI App 24

(Also reported in 710 N.W.2d 691.)

† Petition to review denied 5-9-06.

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Thomas E. Goss, Jr.* of *Mueller, Goss & Possi, S.C.*, Milwaukee.

On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the brief of *Russell W. Devitt* and *Teague D. Devitt* of *Soffa & Devitt, LLC*, Whitewater.

On behalf of the defendant-respondent-cross-respondent the cause was submitted on the brief of *Susan R. Tyndall* of *CMT Legal Group, Ltd.*, Waukesha.

Before Dykman, Deininger and Higginbotham, JJ.

¶ 1. DYKMAN, J.   State Farm Mutual Automobile

Insurance Company appeals from a summary judgment declaring it responsible for up to $90,475 in underinsured motorist (UIM) coverage. The trial court determined that the reducing, anti-stacking and excess clauses of State Farm's secondary UIM coverage, taken together, were ambiguous within the context of the policy as a whole. We disagree and conclude that the anti-stacking and excess clauses of State Farm's insurance policy are contextually unambiguous and enforceable. Consequently, application of the anti-stacking and excess clauses leaves the Dempiches with no available UIM coverage under their State Farm policy. We therefore reverse the trial court's grant of summary judgment to the Dempiches and remand to the trial court to grant State Farm's summary judgment motion.

¶ 2.　The Dempiches cross-appeal from the trial court's grant of summary judgment to Pekin Insurance Company. They contend they are entitled to recover under Pekin's primary UIM coverage because Pekin's reducing clause is contextually ambiguous. We conclude that Pekin's reducing clause is unambiguous within the context of the policy and is therefore enforceable. As applied here, the clause reduces the Dempiches' available UIM coverage under Pekin's policy to $0. We therefore affirm the grant of summary judgment to Pekin.

### Background

¶ 3.　The relevant facts are undisputed. Rodney Dempich was injured in a two-vehicle accident while operating a van owned by his employer, Godfrey Heating, Inc., in the course of his employment. The driver of the other vehicle, Jeffery Brown, had liability coverage of $50,000 per person with Heritage Insurance Company. Godfrey Heating had worker's compensation

481

(WC) insurance with Pekin Insurance Company, which also provided Godfrey Heating with $100,000 per person and $300,000 per accident UIM coverage. Pekin's UIM policy contained a reducing clause and an "other insurance" provision. Dempich also had $100,000 per person and $300,000 per accident UIM coverage from a State Farm policy his wife, Julie Dempich, carried on her vehicle. This policy contained a reducing clause and an "other insurance" provision as well. We provide the relevant language of these policies in the discussion section.

¶ 4. According to the trial court's decision, Rodney Dempich received approximately $77,000 in WC benefits from his employer's WC policy written by Pekin. The Dempiches settled with Brown's insurer, Heritage, for its policy limit of $50,000. The Dempiches reimbursed Pekin $17,524 for WC it had already paid, in accordance with Wis. Stat. § 102.29 (2003–04).[1] Thus, by the trial court's calculations, the total of the payments the Dempiches collected from Pekin and Heritage less their reimbursement to Pekin left the Dempiches with a net recovery of $109,476.

¶ 5. Rodney Dempich filed separate UIM claims with Pekin and State Farm for the $100,000 UIM limit provided by each policy. Both companies denied coverage. Pekin's denial was based on its policy's reducing clause because the Dempiches' net recovery exceeded Pekin's $100,000 UIM limit. State Farm denied coverage because its UIM coverage was secondary and would pay only the amount by which its limits exceeded the UIM limits of the primary carrier, Pekin. Because State Farm's UIM limit was $100,000 per person—the same

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

as Pekin's UIM limit—State Farm concluded that the Dempiches were not entitled to recover under its UIM coverage.

¶ 6. The Dempiches sued for declaratory relief. They moved for summary judgment, requesting a declaration that Pekin and State Farm were each liable to them for the $100,000 UIM limits of their respective policies. State Farm also moved for summary judgment, requesting a declaration that the Dempiches were not entitled to recover under the UIM coverage of its policy.

¶ 7. The circuit court denied the Dempiches' motion as to Pekin and granted Pekin summary judgment. The court determined that Pekin's reducing clause was unambiguous alone and within the context of the policy and served to deny the Dempiches recovery under the UIM coverage part. The court granted the Dempiches' summary judgment motion against State Farm and therefore denied State Farm's motion. The court determined that the Dempiches were entitled to a maximum recovery of $90,475 under the UIM coverage part of State Farm's policy. The court concluded that, standing alone, the UIM coverage's reducing clause, and the excess and anti-stacking clauses of the "other insurance" section of the State Farm policy, were unambiguous and that each plainly denied the Dempiches UIM recovery. However, the court determined that, within the context of the entire policy, the reducing, excess and anti-stacking clauses together were ambiguous. State Farm appeals, and the Dempiches cross-appeal.

### *Discussion*

¶ 8. Under Wɪs. Stat. § 802.08(2), summary judgment is appropriate when the affidavits and other offers of proof "show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." When reviewing the grant or denial of a summary judgment motion, we apply the standards set forth in § 802.08 in the same manner as the trial court. *Voss v. Middleton*, 162 Wis. 2d 737, 748, 470 N.W.2d 625 (1991).

¶ 9. The interpretation of an insurance contract presents a question of law that is reviewed de novo. *Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857. "[T]he first issue in construing an insurance policy is to determine whether an ambiguity exists regarding the disputed coverage issue." *Id.*, ¶ 13. If a provision of an insurance policy is ambiguous with regard to a coverage dispute, we will construe that provision in favor of the insured. *Folkman*, 264 Wis. 2d 617, ¶ 13.

¶ 10. The supreme court has recognized that a provision unambiguous on its own may be ambiguous within the context of the policy as a whole. *See, e.g. Taylor v. Greatway Insurance Co.*, 2001 WI 93, ¶ 27, 245 Wis. 2d 134, 628 N.W.2d 916. Contextual ambiguity is present if a provision, when read in light of the policy's other language, is reasonably susceptible to more than one interpretation. *Folkman*, 264 Wis. 2d 617, ¶ 28. "To prevent contextual ambiguity, a policy should avoid inconsistent provisions, provisions that build up false expectations, and provisions that produce reasonable alternat[e] meanings." *Id.*, ¶ 31. On appeal and cross-appeal, the Dempiches do not assert that the relevant provisions of State Farm's or Pekin's UIM policies are ambiguous when considered separately. They allege only that the insurers' UIM coverages are contextually ambiguous.

¶ 11.   The Dempiches contend that Pekin's UIM reducing clause is ambiguous within the context of the policy as a whole.[2] The UIM coverage section is contained in two endorsements to the policy. The first endorsement, entitled "WISCONSIN UNDERINSURED MOTORIST COVERAGE," contains the following reducing language:

**D. LIMIT OF INSURANCE**

1. [T]he most we will pay for all damages resulting from any one "accident" is the LIMIT OF INSURANCE for UNDERINSURED MOTORISTS COVERAGE shown in the Schedule or Declarations.

. . . .

3. The Limit of Insurance under this coverage shall be reduced by:

---

[2] As provided by WIS. STAT. § 632.32(5)(i), a reducing clause is a provision of an insurance contract that reduces the limits of a policy by amounts paid or payable from other sources. The statute states:

A policy may provide that the limits under the policy for uninsured or underinsured motorists coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

2. Amounts paid or payable under any worker's compensation law.

3. Amounts paid or payable under any disability benefits laws.

485

a. All sums paid or payable under any workers' compensation, disability benefits or similar law, and

b. All sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's LIABILITY COVERAGE.

A second brief endorsement, entitled "WISCONSIN SPLIT UNDERINSURED MOTORISTS COVERAGE LIMITS," states that it replaces Paragraph 1. of Section D. of the endorsement (cited above) with the following:

1. Regardless of the number of covered "autos," "insureds," claims made, premiums paid or vehicles involved in the "accident," the limit of insurance is as follows:

a. The most we will pay for all damages resulting from "bodily injury" to any one person caused by any one "accident," including all damages claimed by any person or organization for care, loss of services or death resulting from the "bodily injury," is the limit of "Bodily Injury" shown in the Schedule for each person.

b. Subject to the limit for "each person," the most we will pay for all damages resulting from "bodily injury" caused by any one "accident" is the limit shown in the Schedule for "each accident."

c. If coverage for "property damage" is provided by this insurance, the most we will pay for all damages resulting from "property damage" caused by any one "accident" is the limit of "property damage" shown in the Schedule for each "accident."

¶ 12.   The Dempiches assert that Pekin's policy is similar to the policy we found to be ambiguous in *Dowhower v. Marquez*, 2004 WI App 3, 268 Wis. 2d 823, 674 N.W.2d 906 (*Dowhower III*). They argue that, like

the *Dowhower III* policy, Pekin's policy: (1) does not mention on its declarations page that its UIM coverage is subject to a reducing clause, *Dowhower III*, 268 Wis. 2d 823, ¶ 20; (2) does not in its table of contents list underinsured motorist coverage or alert the insured to the existence of endorsements to the policy, *id.*, ¶ 22; (3) does not define "reducing clause," "endorsements" or "underinsured motorist," *id.*, ¶ 23; (4) does not explain what affect endorsements may have on coverage, *id.*, ¶ 21; (5) confuses uninsured and underinsured coverage parts, titling Part VI in the body of the policy "UNINSURED MOTORISTS INSURANCE (INCLUD-ING UNDERINSURED MOTORIST") without using the word underinsured again in the section or noting that the coverage is subject to a reducing clause, *id.*, ¶ 21; and (6) is too organizationally complex for a reasonable insured to navigate, *id.*, ¶ 28.

¶ 13. The Dempiches also note that the first two endorsements to the policy, neither of which pertain to UIM coverage, do not appear on the declarations page. Only after the body of the policy and four pages of endorsements does the policy address UIM coverage. They further note that the "LIMIT OF INSURANCE" section of the "WISCONSIN UNDERINSURED MO-TORIST COVERAGE" states that "the most we will pay for all damages resulting from any one 'accident' is the LIMIT OF INSURANCE for UNDERINSURED MO-TORISTS COVERAGE shown in the Schedule or Decla-rations." They assert that this language is misleading because rarely would Pekin ever pay the full "limit of insurance" by virtue of the reducing clause. In sum, they contend that, as in *Dowhower III*, the Pekin policy's "inadequate and misleading organization, labeling and explanations make it nearly impossible for a reasonable insured to locate, let alone comprehend the extent of,

his or her UIM coverage." *Dowhower III*, 268 Wis. 2d 823, ¶ 29. Though Pekin's policy is far from ideal, we disagree.

¶ 14.   Unlike *Dowhower III*, Pekin's declarations page is a serviceable road map to the policy. Underinsured motorist coverage has its own line in the "coverages" section, instead of being subsumed by the line item for uninsured motorist coverage as it was in *Dowhower III*, 268 Wis. 2d 823, ¶ 20. Moreover, contrary to the *Dowhower III* policy, the insured is made aware of the existence of endorsements to the policy on the declarations page in a separate section entitled "policy endorsements." Listed there are endorsements for "WISCONSIN UNDERINSURED MOTORISTS COVERAGE" and "WISCONSIN SPLIT UNDERINSURED MOTORISTS COVERAGE." As the Dempiches assert, the UIM coverage part does not appear on the table of contents. However, neither do other endorsements to the policy. More importantly, the endorsement for UIM coverage is referenced on the declarations page, "the most crucial section of the policy for the typical insured." *Folkman*, 264 Wis. 2d 617, ¶ 37 (*citing Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, 236 Wis. 2d 113, 613 N.W.2d 557 (Bradley, J., concurring) (*Dowhower I*)).

¶ 15.   Ideally, the declarations page might alert the insured to the existence and effect of a reducing clause. In addition, we note that the failure to list the first two endorsements on the declarations page is a bit disconcerting. However, *Folkman* states that our role is not to set "aspirational goals" or "demand perfection" in draftsmanship, but to determine if a policy as written is susceptible to more than one reasonable interpretation.

488

*Folkman*, 264 Wis. 2d 617, ¶ 29–30. We conclude that this policy is not susceptible to multiple reasonable interpretations.

¶ 16.   The listing of endorsements for UIM coverage on the declarations page is sufficient to alert an insured to the presence of policy amendments that are relevant to the insured's UIM benefit. The UIM endorsements state at the top and in bold:   "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." The reducing language contained in the endorsements is unambiguous. We disagree with the Dempiches' view that paragraph 1. of "LIMITS OF INSURANCE" sets unreasonable expectations for the insured. Paragraph 3. of the same section states that "[t]he Limit of Insurance under this coverage *shall be reduced by*" (emphasis added) and lists types of payments that would reduce the amount paid under the UIM coverage. More importantly, paragraph 1. itself is replaced by the unambiguous reducing language of the next endorsement, which, as noted, is referenced on the declarations page. Finally, contrary to the Dempiches' assertions, failure to define the word "endorsement" does not render a policy ambiguous. *See Van Erden v. Sobczak*, 2004 WI App 40, ¶ 18, 271 Wis. 2d 163, 677 N.W.2d 718 ("[T]he meaning of the word 'endorsement' in the insurance context is well-known."). For the foregoing reasons, we conclude Pekin's UIM reducing clause is not contextually ambiguous and thus is enforceable. Here, because Pekin may apply all of the $109,476 paid to the Dempiches to reduce its UIM liability, and this amount exceeds the policy's $100,000 UIM limit, their UIM liability to the Dempiches is reduced to $0. We therefore affirm the circuit court's grant of summary judgment to Pekin.

489

## State Farm's UIM Coverage

¶ 17.   It is undisputed that State Farm's policy is secondary or excess to Pekin's policy in this case because Rodney Dempich was operating a vehicle insured by Pekin at the time of the accident. State Farm emphasizes that its UIM coverage is not "umbrella" coverage, but a primary coverage that, in certain circumstances like those here, becomes secondary. State Farm contends that its UIM coverage is not contextually ambiguous, and that it therefore should be able to fully apply its reducing, excess and anti-stacking provisions. The Dempiches contend that the reducing, excess and anti-stacking clauses each give rise to contextual ambiguity. Because State Farm's policy is secondary to Pekin's, we examine first State Farm's excess and anti-stacking clauses.

### A. Anti-Stacking and Excess Clauses

¶ 18.   State Farm's "other insurance" provision, which contains its excess and anti-stacking clauses,[3] states:

> Regardless of the number of policies involved, vehicles involved, *persons* covered, claims made, ve-

---

[3] Authorized by Wis. Stat. § 632.32(5)(f), an anti-stacking clause provides that when other insurance is present, the policy's limits will not be added to the policy limits of the other insurance. The statute states:

> A policy may provide that regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid the limits for any coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available for bodily injury or death suffered by a person in any one accident.

hicles insured, or premiums paid, the limits for under-insured motor vehicle coverage under this policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limits of underinsured motor vehicle coverage available for *bodily injury* suffered by an *insured* in any one accident.

Subject to the above:

. . . .

2. If the *insured* sustains *bodily injury* while *occupying* a vehicle not owned or leased by *you*, *your spouse*, or *your* relative who resides primarily in *your* household, then this coverage applies:

a. as excess to any underinsured motor vehicle coverage which applies to the vehicle or driver as primary coverage; but

b. only in the amount by which it exceeds the primary coverage.

¶ 19. The Dempiches assert that both State Farm's excess and anti-stacking clauses are contextually ambiguous. They contend the anti-stacking clause is ambiguous because it does not clearly state whether it prevents State Farm's limits from being added to a second UIM policy's limits even when, as here, the second insurer has not paid its limits or any portion thereof. We conclude that whether the second insurer has paid is irrelevant under the language of the policy.

¶ 20. In *Estate of Dorschner v. State Farm Mut. Auto Ins. Co.*, 2001 WI App 117, 244 Wis. 2d 261, 628 N.W.2d 414, we found unambiguous an anti-stacking provision of a UM policy that is identical to the anti-stacking clause here. The controlling facts of *Dorschner* resemble those of the present case. Dorschner was

killed while riding as a passenger in a car operated by a relative who had $100,000 per person/$300,000 per accident UM coverage through Economy Insurance. *Id.*, ¶ 2. Dorschner had $50,000 of UM coverage through State Farm for his own vehicle, and his estate attempted to collect the limit of his policy. *Id.*

¶ 21.   The circuit court in *Dorschner* determined that an anti-stacking clause of State Farm's policy prevented Dorschner from collecting on the UM coverage, and we affirmed. Significantly, the language of the anti-stacking clause in *Dorschner* is identical to the anti-stacking clause here. This language "tracks verbatim the language of [WIS. STAT.] § 632.32(5)(f) which authorizes such provisions." *Id.*, ¶ 12. We recognize that verisimilitude between the statute and the policy language does not end our inquiry. *See Badger Mutual Ins. Co. v. Schmitz*, 2002 WI 98, ¶¶ 61, 75, 255 Wis. 2d 61, 647 N.W.2d 223. However, we conclude that in the present case this language is unambiguous when viewed in light of the entire policy.

¶ 22.   The Dempiches' alternate interpretation of the contract is unreasonable. The contract language plainly refers to "the limits of [UIM] coverage available" without regard to whether the limits of another primary policy are paid. The Dempiches appear to suggest that for the anti-stacking clause to be unambiguous it must state that it is applicable "whether these limits are paid or not." However, our role is to "assess[] whether a policy, as written, is ambiguous in context" and not to require insurers "to undertake affirmative, explanatory responsibilities in drafting policies." *Folkman*, 264 Wis. 2d 617, ¶ 30. Because we conclude that the anti-stacking clause lends itself to only one reasonable interpretation when applied to this case, it may be

enforced to prevent the Dempiches from adding the limits of the State Farm policy to the limits of Pekin's policy.

¶ 23.  Similarly, the Dempiches contend the excess clause is contextually ambiguous, asserting that the clause may be read to apply only when the insured has received payment from the primary UIM insurer. They cite *Janssen v. State Farm Mut. Auto Ins. Co.*, 2003 WI App 183, 266 Wis. 2d 430, 668 N.W.2d 820 (*Janssen II*), where we construed a State Farm excess clause identical to the policy here to be ambiguous as applied in that case.

¶ 24.  The Dempiches' reliance on *Janssen II* is misplaced. There, no primary insurer was present, and the policy stated that the excess coverage was "only for the amount by which it exceeds the primary coverage." *Janssen II*, 266 Wis. 2d 430, ¶ 12. We concluded that this language was ambiguous where there was no primary coverage to which the State Farm policy could be excess. *Id.* Moreover, *Janssen II* distinguished *Dorschner* because in *Dorschner*, as here, primary coverage was present. *Id.*, ¶ 10. Finally, we agree with State Farm that its excess clause does not provide "true excess" or umbrella coverage, i.e., the type of coverage designed to provide "security and peace of mind" to the purchaser which "cover[s] losses that exceed the basic or usual limits of liability provided by other insurance policies." BLACK'S LAW DICTIONARY (7th ed. 801).

■

¶ 25.  Again, we reject the Dempiches' view that the policy is susceptible to a reading that the primary insurer must actually pay to the limit of its coverage before the excess clause will take effect. Here, as in *Dorschner*, the application of the anti-stacking and excess clauses results in the plaintiffs receiving the

"highest coverage available under any single policy, which is exactly what [State Farm's policy] promised to do." *Dorschner*, 244 Wis. 2d 261, ¶ 13. State Farm's excess clause, like its anti-stacking clause, makes no reference to payments, but merely describes when the policy is excess and how its coverage is affected by the primary coverage. A reasonable insured would not conclude that payment from the primary insurer would be necessary for this excess clause to take effect. Accordingly, we conclude the excess clause, like the anti-stacking clause, is unambiguous in the present context and therefore enforceable.

¶ 26. In review, State Farm's and Pekin's policies each provide $100,000 per person UIM coverage, and State Farm's excess clause states that its coverage applies "only in the amount by which it exceeds the primary coverage." Because the amount of State Farm's coverage limit does not exceed Pekin's primary coverage limit, its liability to the Dempiches as the excess UIM insurer is $0.

## B. Reducing Clause and the Trial Court's Conclusion

¶ 27. State Farm's reducing language provides:

> 1. The amount of coverage is shown on the declarations page under "Limits of Liability—W—Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. *"Bodily injury* to one *person"* includes all injury and damages to others resulting from this *bodily injury.* Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

> 2. The most we will pay is the lesser of:

a. the limits of liability of this coverage reduced by any of the following that apply:

(1) the amount paid to the *insured* by or on behalf of any *person* or organization that may be legally responsible for the *bodily injury*; or

(2) the amount paid or payable under any workers' compensation or disability benefits law; or

b. the amount of coverage sustained, but not recovered.

¶ 28. As we have noted, the trial court concluded that the reducing, anti-stacking and excess clauses, when considered separately, were each unambiguous in the context of the policy. However, the court then determined that, when taken together, the clauses

effectuate illusory coverage of $100,000 per person in this case, regardless of the clarity of those clauses by themselves. The Court concludes a reasonable insured reading State Farm's policy would not understand that notwithstanding the anti-stacking clause, when injured occupying another person's vehicle having UIM coverage, payments received from others legally responsible, would be counted once to reduce the coverage of the primary UIM insurer, and counted again to reduce the insured's own secondary UIM coverage with State Farm. Under State Farm's policy as written, Mr. Dempich's $100,000 UIM coverage under two policies would be reduced to zero twice from the same recovery of $109,476 received from others legally responsible. In this circumstance, the Court concludes State Farm's UIM $100,000 per person secondary coverage, is deceptive and ambiguous in the context of the whole policy, because the possibility of such $0 secondary coverage is not clearly stated. [Citations omitted.]

495

¶ 29. The Dempiches contend that State Farm's UIM reducing clause is ambiguous within the context of the policy. State Farm disputes this, but first contends that because their anti-stacking and excess clauses are enforceable (as we have concluded) and prevent the Dempiches from recovering under their State Farm UIM coverage, the clarity or ambiguity of its reducing clause is irrelevant here. They argue that, after determining the scope of the secondary coverage defined by the anti-stacking and excess clauses, a reasonable insured would conclude that there is no available UIM coverage to reduce. We agree with State Farm.

¶ 30. The trial court determined that "notwithstanding the anti-stacking clause" a reasonable insured would not understand that the Dempiches' liability and worker's compensation recovery would be "counted twice" by the reducing clauses of Pekin's and State Farm's policies, respectively, to reduce State Farm's secondary UIM coverage to $0. We believe the trial court's analysis unnecessarily added the reducing clause into the mix. Rather, we conclude that a reasonable insured would not consider the policy apart from the anti-stacking and excess clauses, and would consequently apply their unambiguous terms to conclude that no UIM coverage was available under State Farm's secondary policy. Under the circumstances of this case, the anti-stacking and excess clauses, not the reducing clause, define the extent of available UIM coverage under State Farm's policy. Moreover, State Farm is not required to clearly state the possibility of $0 secondary coverage to avoid ambiguity. *See Folkman*, 264 Wis. 2d 617, ¶ 30.

¶ 31. Further, we note that holding liable the secondary UIM insurer, State Farm, would be a strange

496

result in this case. As State Farm observes, the trial court's decision put it in a worse position than if it had been the primary insurer. While the trial court concluded that both Pekin's and State Farm's reducing clauses were unambiguous, it determined that State Farm, as the secondary insurer, had a special obligation to "clearly state[]" "the possibility of ... $0 secondary coverage." Because State Farm failed to state this possibility, the trial court concluded State Farm was liable where Pekin, the primary insurer, was not, by virtue of being the second insurer in line to "count" the Dempiches' recovered damages under its reducing clause. This would appear to be a curious result.

¶ 32.   We conclude that State Farm's anti-stacking and excess clauses are unambiguous in the context of the policy. Thus, these clauses are enforceable and, as applied here, prevent the Dempiches from recovering under State Farm's secondary UIM coverage. Accordingly, we reverse the trial court's grant of summary judgment to the Dempiches against State Farm, and direct the trial court to grant State Farm summary judgment. We affirm the trial court's grant of summary judgment to Pekin.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.