# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2020AP1078-FT

†Petition for Review filed

Complete Title of Case:

### SECURA SUPREME INSURANCE COMPANY,

### PLAINTIFF-APPELLANT,†

### V.

### THE ESTATE OF DANIEL KEITH HUCK,

### DEFENDANT-RESPONDENT.

| | |
|---|---|
| Opinion Filed: | September 29, 2021 |
| Submitted on Briefs: | August 26, 2021 |

| | |
|---|---|
| JUDGES: | Neubauer, Reilly and Grogan, JJ. |
| Concurred: | Grogan, J. |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Barbara A. O'Brien* and *Erik M. Gustafson* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the defendant-respondent, the cause was submitted on the brief of *Tony M. Dunn* and *Angela Komp* of *Habush Habush & Rottier, S.C.*, Racine. |

**2021 WI App 69**

# COURT OF APPEALS
# DECISION
# DATED AND FILED

## September 29, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

**Appeal No.    2020AP1078-FT**

Cir. Ct. No.  2019CV1847

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**

---

SECURA SUPREME INSURANCE COMPANY,

   PLAINTIFF-APPELLANT,

 V.

THE ESTATE OF DANIEL KEITH HUCK,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Racine County: EUGENE A. GASIORKIEWICZ, Judge. *Affirmed*.

Before Neubauer, Reilly and Grogan, JJ.

¶1     NEUBAUER, J.   Secura Supreme Insurance Company appeals from an order granting judgment to the Estate of Daniel Keith Huck (Estate).  We agree with the Estate that the circuit court correctly held that Secura is only permitted to

reduce its coverage limits under WIS. STAT. § 632.32(5)(i)2. (2019-20)[1] and its underinsured motorist's insurance policy by the total amount of worker's compensation received by the Estate. We affirm.

## BACKGROUND

¶2      Daniel Keith Huck (Huck) was struck and killed by a motorist while working for the Village of Mt. Pleasant. The tortfeasor had an insurance policy with liability limits of $25,000, which were paid to Huck's Estate.

¶3      Because Huck was in the course and scope of his employment with the Village when he died, the Estate initially received $35,798.04 from the Village's worker's compensation insurer (WC Insurer).[2] However, the Estate was obligated by WIS. STAT. § 102.29 to refund the WC Insurer $9718.73 from the $25,000 settlement with the tortfeasor.[3] Thus, the Estate netted only $26,079.31 from worker's compensation.

¶4      Huck had purchased an automobile insurance policy with underinsured motorist (UIM) limits of $250,000 limits from Secura, and thus, the

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The complaint identifies the payor as the Village and/or worker's compensation insurer. Whether the payor was one or the other due to self-insurance, or partially one or the other, there is no dispute that the payor was repaid.

[3] WISCONSIN STAT. § 102.29(1)(b) sets forth a mandatory formula for distributing the proceeds of a settlement or judgment from a tortfeasor, including a formula for reimbursing the worker's compensation insurer.

Estate submitted a claim under his policy.[4]  The policy, which effectively tracks the language of WIS. STAT. § 632.32(5)(i)2., permits reducing the UIM limits by "all sums … [p]aid or payable because of the bodily injury under … [w]orker's compensation law."[5]  After this action was filed, Secura moved for judgment on the pleadings pursuant to WIS. STAT. § 802.06(3), contending that its limits could be reduced by the amount paid by, and then paid back to, the WC Insurer pursuant to WIS. STAT. § 102.29.  In other words, Secura sought to reduce its limits by the $9718.73 the WC Insurer paid to the Estate that the Estate repaid to the same WC Insurer.

---

[4] The parties agree that Huck's damages exceeded his $250,000 underinsured motorist (UIM) limits, that the tortfeasor bore all responsibility, and that the UIM policy limits were appropriately reduced by the $26,079.31 paid by the worker's compensation insurer, which we will not discuss further.

[5] WISCONSIN STAT. § 632.32(5)(i) provides:

   **(5)** PERMISSIBLE PROVISIONS.

   (i) A policy may provide that the limits under the policy for uninsured motorist coverage or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

   1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

   2. *Amounts paid or payable under any worker's compensation law.*

   3. Amounts paid or payable under any disability benefits laws.

(Emphasis added.)

¶5 The circuit court rejected Secura's contention and granted the Estate judgment on its counterclaim for the disputed amount of $9718.73. Secura appeals.

## DISCUSSION

¶6 Before us is whether the circuit court properly granted judgment to the Estate based on its conclusion that WIS. STAT. § 632.32(5)(i)2. permits Secura to reduce its coverage limits only by the total amount of worker's compensation received by the Estate. The parties agree that the interpretation of this statute presents a question of law that this court reviews de novo. *See Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶9, 293 Wis. 2d 123, 717 N.W.2d 258.

¶7 The statutory analysis of WIS. STAT. § 632.32(5)(i)2. set forth in *Teschendorf* guides our decision. In that case, our supreme court rejected the insurer's attempt to reduce the deceased insured's heirs' recovery under its uninsured motorist (UM) insurance coverage applying the same reducing clause at issue here, subdivision (5)(i)2., by sums paid not to the insured, but to a supplemental work injury state fund.[6] *Teschendorf*, 293 Wis. 2d 123, ¶¶2, 44, 63. The analysis applies with equal, if not more, force here.

¶8 In *Teschendorf*, as here, the insured was killed in an auto accident in the course of his employment. *See id.*, ¶3. Because the insured had no dependents, his worker's compensation death benefit was paid to the state fund per WIS. STAT.

---

[6] While *Teschendorf v. State Farm Insurance Cos.*, 2006 WI 89, 293 Wis. 2d 123, 717 N.W.2d 258, dealt with an uninsured motorist (UM) policy, its analysis applies to UIM policies as well. *See* 1 Sheila M. Sullivan et al., *Anderson on Wisconsin Insurance Law* § 4.37 (8th ed. 2020).

§ 102.49(5)(b).[7]  *Teschendorf*, 293 Wis. 2d 123, ¶3.  When the insured's parents sought coverage under the insured's policy, the insurer contended that its reducing clause barred recovery for sums paid to the state fund.  *Id.*, ¶¶4-5.  Our supreme court unanimously rejected that argument.

¶9      The court split as to why the reduction was impermissible; some justices thought WIS. STAT. § 632.32(5)(i)2. was ambiguous while others thought its literal application created an absurd result.  *Teschendorf*, 293 Wis. 2d 123, ¶¶29-30.  Justice David T. Prosser, Jr., joined by Justice Patience Drake Roggensack, also concurred on the grounds that, under the policy, an insured would reasonably expect that the coverage limits would be reduced only by payments the insured receives.  *Id.*, ¶83 (Prosser, J., concurring).[8]  In short, the result, agreed to by all seven justices, was that the UM coverage limits could only be reduced by worker's compensation amounts paid to the insured, the insured's heirs, or the insured's estate.[9]  *Id.*, ¶¶2, 44.

---

[7] As explained in *Teschendorf*, the Work Injury Supplemental Benefit Fund creates a source of worker's compensation benefits for certain cases in addition to the benefits an employer or worker's compensation carrier is required to pay to an employee who is injured or who dies in the course of his or her employment, such as benefits for minor children of an employee who dies in the course of employment, or for claimants whose meritorious claims are time-barred. *Teschendorf*, 293 Wis. 2d 123, ¶¶33-36 (citing WIS. STAT. §§ 102.44, 102.47, 102.49, 102.59, 102.65, and 102.66 (2001-02)).  The Fund is financed by payments from employers or worker's compensation carriers under various circumstances, including anytime an employee dies in the course of employment and leaves no dependents, sec. 102.49(5)(b).  *Teschendorf*, 293 Wis. 2d 123, ¶35.

[8] Chief Justice Shirley S. Abrahamson joined the majority opinion's conclusion but favored "just determining what a statute means" rather than the "ambiguous/unambiguous/literal/plain meaning" approach.  *Teschendorf*, 293 Wis. 2d 123, ¶¶64-70.

[9] For ease of reference, we will refer generally to a deceased insured, the insured's heirs, or the insured's estate as simply "the insured" or the "injured person."

¶10     The court in *Teschendorf* squarely rejected application of the literal reading of the reducing clause Secura proposes here. *See id.*, ¶¶22, 24, 44. In that case, the UM insurer argued that both WIS. STAT. § 632.32 (5)(i)2. and the policy permitted coverage limits to be reduced by any worker's compensation payment made, regardless of the recipient. *Teschendorf*, 293 Wis. 2d 123, ¶¶5, 22.

¶11     The justices who determined that the statutory language is ambiguous noted that the statutory scheme requires that insurers provide a minimum amount of UM coverage for the protection of their insureds, WIS. STAT. § 632.32(4) (2001-02).[10] *Teschendorf*, 293 Wis. 2d 123, ¶¶23, 27. The purpose is to protect insureds who are legally entitled to recover damages for bodily injury, death, sickness, or disease from owners or operators of underinsured or uninsured motor vehicles. *Id.*, ¶24; *see* WIS. STAT. § 632.32(2)(d), (f). By limiting insurers' exposure with permitted reducing clauses that take into account payments from specified sources, the legislature intended that UM premiums would be affordable and would encourage insureds to purchase the "predetermined, fixed level of insurance coverage" that they would need, rather than "rely on the unpredictable liability coverage of tortfeasors." *Id.*, ¶¶26-27. This comports with the statutory purpose— to put victims of an uninsured motorist's negligence in the same position they would have occupied had the liable party's insurance limits been the same as the UM limits purchased by the insureds. *Id.*, ¶24. Adopting the insurer's interpretation would deny the injured person a predetermined, fixed level of coverage for an accident from a combination of the tortfeasor's insurance and the UM insurance, in

---

[10] The current statute also provides for a minimum amount of UIM coverage if the insured accepts. WIS. STAT. § 632.32(4m)(d).

contravention of the underlying statutory purpose, despite having paid premiums for the same. *Id.*, ¶28.

¶12 The justices who determined that the literal language of the statute allows policy limits to be reduced regardless to whom the worker's compensation payment is made concluded that this interpretation was absurd. *Id.*, ¶32. These justices noted that a reduction for the amount paid to the state fund would mean that even when an insured's damages exceed the UM/UIM policy limits, the amount actually recovered from all sources "would *never* equal the limits" of his or her UM/UIM coverage. *Id.*, ¶39. "There is no plausible reason why the legislature would have denied dependents this money." *Id.*

¶13 The justices provided numerous examples of disparities that would be visited upon the injured person under the insurer's interpretation which further underscored incongruous and unintended results. *Id.*, ¶¶39-43. For example, an individual injured while at work would receive less than one on the way home from church, and in some instances, nothing at all. *Id.*, ¶¶40-42. An individual who lost a limb or eye would receive less coverage, a result the legislature could not have intended. *Id.* Each scenario, considered in terms of whether what the insured received, would produce results contrary to the supreme court's holding that the purpose of UM/UIM coverage is to provide a predetermined, fixed level of coverage. *Id.*, ¶42 (citing *Welin v. American Fam. Mut. Ins. Co.*, 2006 WI 81, ¶¶46, 49-53, 292 Wis. 2d 73, 717 N.W.2d 690). Again, from the perspective of what the injured person actually received, the insurer's "interpretation produces absurd results and defies both common sense and the fundamental purpose" of worker's compensation and UM/UIM coverage. *Teschendorf*, 293 Wis. 2d 123, ¶43.

¶14    The supreme court justices all agreed upon an analysis of the "legislative history, legislative purpose, and public policy to discern [the] intent" behind UM/UIM insurance and the reducing clauses. *Id.*, ¶18.  Summarizing a thorough review here, the court seized upon legislative history which explained the proposed reducing clauses in terms of whether the insurer "received" the payments from other sources. *Id.*, ¶¶49, 53.  The court noted that the insertion of "that apply" in WIS. STAT. § 632.32(5)(i) was "a protection against payments that do not apply and thus do not reduce coverage." *Teschendorf*, 293 Wis. 2d 123, ¶53.  The court further noted that the statutory changes adopted in 1995 were "intended to 'remedy' the refusal of Wisconsin courts to allow insurers to reduce uninsured motorist limits *by amounts received by an injured person* from other sources." *Id.*, ¶56.

¶15    In addition to the court's conclusion that it found no Wisconsin case law support for the insurer's argument, the court explained:

> Moreover, in none of the leading treatises on uninsured motorist and underinsured motorist insurance is there even a hint that uninsured motorist limits could be reduced by worker's compensation payments made to anyone other than the insured or to someone on behalf of the insured, the insured's heirs, or the insured's estate. *See generally*, 2 Irvin Schermer & William Schermer, *Automobile Liability Insurance* §§ 28:3 to 28:8 (4th ed. 2004); 1 Alan Widiss, *Uninsured and Underinsured Motorist Insurance* §§ 14.3, 41.10 (Revised 2nd ed.1999); 3 Matthew Bender & Co., Inc., *No-Fault and Uninsured Motorist Automobile Insurance* § 31.20 (2003); 12 Lee Russ & Thomas Segalla, *Couch on Insurance* §§ 171:37 to 171:43.  Rather, a review of these treatises reveals that the application of a setoff or reducing clause presumes some payment to the insured, which in turn reduces the amount of uninsured motorist benefits owed to the insured.  Because the result proposed by American Family is not suggested by any case or secondary source that we have been able to find, and because American Family has not directed our attention to any such source, we think it extraordinarily unlikely that the legislature contemplated the result sought by the insurer.

*Teschendorf*, 293 Wis. 2d 123, ¶55. After a review of the public policy considerations, the court again concluded that the policy limits could only be reduced by amounts paid to the insured, the insured's heirs, or the insured's estate under WIS. STAT. § 632.32(5)(i)2., and as such, under the policy. *Teschendorf*, 293 Wis. 2d 123, ¶¶58-62.

¶16 The consistent focus throughout the supreme court's analysis, regardless of the approach, was on what the injured person actually received from the worker's compensation insurer. Beyond ensuring the fixed level of coverage that the legislature intended and the insured paid premiums for and reasonably expected, the focus on what the injured person recovers makes sense, because the purpose of the reducing clause is to prevent double recovery by the insured. *Id.*, ¶38 ("[T]the legislature's decision to link the operation of uninsured motorist reducing clauses to recovery of worker's compensation benefits has the reasonable purpose of preventing double recovery."). "It is hard to think of a reason for allowing uninsured motorist limits to be reduced by worker's compensation benefits paid to the [state] Fund that is consistent with the purposes of the [worker's compensation act] and uninsured motorist coverage, both of which seek to protect injured persons." *Id.*

¶17 In an effort to distinguish *Teschendorf*, Secura asserts that the WC Insurer *did* pay the Estate $9718.73—ignoring that the amount initially paid was paid back. Secura's argument defies common sense and the fundamental purpose of UM/UIM insurance coverage, as explained by the supreme court in *Teschendorf*.

¶18 Secura provides no on point case law or secondary source support for its attempt to reduce the policy limits by amounts paid by, and paid back to, the WC

insurer.[11] Its position ignores *Teschendorf*'s emphasis on the amount actually recovered for injuries caused by a negligent tortfeasor, a focus that each of the justices agreed (1) is consistent with providing a predetermined, fixed level of coverage that cannot be taken away by happenstance (i.e., an insured happens to be injured while at work); (2) protects the injured person; and (3) runs no risk of a double recovery, the reason for the reducing clauses.[12]

¶19     More to the point, we agree with the Estate's basic contention that under the language of the statute, the Estate was *not* paid an amount of $9718.73, because that initial amount was paid back. The statute does not restrict the reducing

---

[11] By contrast, the Estate points to several authorities that support its position that the insurer is only entitled to reduce the policy limits by the *net* amount received by the injured person in worker's compensation payments. *See Dempich v. Pekin Ins. Co.*, 2006 WI App 24, ¶4, 289 Wis. 2d 477, 710 N.W.2d 691; *Freda v. State Farm Mut. Auto. Ins. Co.*, No. 12-C-0570, 2013 WL 3829630 (E.D. Wis. July 23, 2013). Because neither case discusses the rationale for the result, while the rationale in *Teschendorf*, 293 Wis. 2d 123, is extensive and compelling, we simply note but need not discuss these cases further. The Estate also points to *Cherry v. Coregis Insurance Co.*, 204 P.3d 522 (Idaho 2009) and *Wildman v. National Fire and Marine Insurance Co.*, 703 N.E.2d 683 (Ind. App. 1998), which are consistent with Justice Prosser's concurrence in *Teschendorf* focusing on the reasonable expectations of the insured pursuant to the policy language. Because *Teschendorf* addresses the statutory analysis, which in turn controls the analysis of the policy, which must conform to the statute, we need not address these cases further.

[12] Secura contends that the Estate will recover more than if the tortfeasor had $250,000 limits because *Teschendorf* precludes reduction of the amount paid to the state fund, whereas the tortfeasor's liability limit could be reduced by that amount. However, our supreme court has repeatedly emphasized that the "underlying purpose of the underinsured motorist statute is not to permit limits-to-limits coverage as such, but rather, to allow UIM policies that furnish an insured a predetermined, fixed level of coverage for an accident from a combination of the tortfeasor's insurance and the [UM/]UIM insurance." *Welin v. American Fam. Mut. Ins. Co.*, 2006 WI 81, ¶52, 292 Wis. 2d 73, 717 N.W.2d 690. In *Welin*, the court held that the UM/UIM insurer could not reduce its limits by the tortfeasor's insurer's payments to other injured parties in the accident, in that case, the passenger. *Id.*, ¶56-57. The court held that failing to consider "the amount actually available to the insured from the tortfeasor's liability policy contravenes the concept that the UIM insured purchases a predetermined, fixed amount of coverage and operates as a hidden reducing clause." *Id.*, ¶53. Again, the purpose is to (1) provide a predetermined, fixed level of coverage for the accident from a combination of the tortfeasor's insurance and the UM/UIM insurance that cannot be taken away by happenstance (payment to an injured passenger that reduces the tortfeasor's liability insurance); (2) protect the injured person; and (3) remove the risk of a double recovery, the reason for the reducing clauses.

clause's application to a certain period of time—here, the WC Insurer's preliminary payment. In other words, nothing suggests the provision is limited to the initial calculation when that amount, after the victim's recovery from the negligent tortfeasor, was statutorily recalculated and reimbursed. And, in that sense, this case is more compelling, because in *Teschendorf* the WC Insurer did actually pay into the state fund. Here, it cannot be said that the WC Insurer paid an amount of $9718.73 because the financial impact both to the WC Insurer and the Estate was $0.

## CONCLUSION

¶20 For the foregoing reasons, we conclude that the circuit court correctly held that Secura is only permitted to reduce its coverage limits under WIS. STAT. § 632.32(5)(i)2. and its underinsured motorist's insurance policy by the total amount of worker's compensation actually received by the Estate. Accordingly, we affirm the order of the circuit court.

*By the Court*.—Order affirmed.

No.    2020AP1078-FT(C)

¶21    GROGAN, J. (*concurring*).  I agree that our decision is controlled by *Teschendorf*[1] and therefore, I join the majority in affirming the circuit court's decision.  I write separately, as Judge Ralph Adam Fine did in the court of appeals *Teschendorf* opinion, to acknowledge that the *text* of the statute does not state that the "payment" must be made to the insured.[2]  The text of the statute does not address what happens after a worker's compensation payment is made but is subsequently partially paid back, which is the factual scenario presented in this case.  On a clean slate, Secura's textual argument may not have been so swiftly dismissed, but our supreme court foreclosed it in *Teschendorf*.

¶22    I respectfully concur.

---

[1]  *Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, 293 Wis. 2d 123, 717 N.W.2d 258.

[2]  *Teschendorf v. State Farm Ins. Cos.*, 2005 WI App 10, ¶¶19-20, 278 Wis. 2d 354, 691 N.W.2d 882 (2004) (Fine, J., dissenting), *aff'd*, 293 Wis. 2d 123.